Okay. Please proceed, Mr. Mei. Your Honors, similar to the first appeal with respect to unified, Dragon raised a single issue here in this appeal. That is whether the recited prior discloses the solid limitation of the claimed control circuit. Again, the solid limitation is a very narrow limitation, and it was the very reason that the patent office allowed these claims over prior simultaneous recording and playback devices, including Goldwasser. In other words, contrary to DISH's assertion, simultaneous recording— I have a fact of understanding that in the prosecution history where the PTO and that supplemental examination, when it allowed the claims, it wasn't looking at EFRAC, right? It wasn't looking at EFRAC at all. Because the PTO did not have EFRAC in place. No, and there's a similar reference, Smith, that teaches a keyboard having a record key and a playback key, but no EFRAC. And contrary to DISH's assertion, simultaneous recording— Just so I understand it, to follow up on Judge Scholl's question, the board in this case used EFRAC only for the remote, right? Correct. And in the earlier prosecution, they used Smith only for the remote, correct? Correct. And in both cases, they used Goldwasser for everything else? Correct. Except in the first case, they said it wasn't enough. Correct. But this case, they said it is enough. Correct. Okay. And the specific limitation, simultaneous recording and playback itself does not equate to the solely limitation. During the supplemental examination, the examiner made very clear that Goldwasser does not teach the recited control circuit, even though Goldwasser teaches simultaneous recording and playback. That was in the context of anticipation, right? I mean, I read the decision on obviousness to be kind of a cursory treatment, if you will. It was maybe one paragraph. Is that correct? There was one paragraph in reference to Smith saying Goldwasser, along or in combination with Smith, does not teach the recited control circuit. But I think Dragan does not agree that's concursory because the entire office communication was very concise. The examiner went through different references and pointed out various claim limitations that were not met. And I think the examiner clearly examined the combination of Goldwasser and Smith and found that did not teach the recited control circuit. And that finding was confirmed, or at least the examiner checked with two other examiners during the supplemental examination and reached that decision. So it's not a situation where a single examiner decided to make a concursory statement there. And in this case, the board's finding, again, is not accompanied by any articulated reasoning as to how the cited prior discloses the solely limitation. Again, the Supreme Court in KSR held that in order to facilitate review, this analysis should be made explicit and cannot be sustained by mere concursory statements. Here, the board provided no evidence, let alone substantial evidence, other than concursory statements to support its obviousness finding. Dish's expert also provided concursory statements that Goldwasser teach the solely limitation, which is contrary to the examiner's finding during the supplemental examination. As a result, Dish's expert's concursory opinion is entitled to little or no weight. I would like to ask you about IFRAC, because the way I read PTAB's decision is they say that it's the combination of the references that would teach the solely limitation. And IFRAC, I realize the control circuit itself is different. It's what Goldwasser is the reference that was relied on by the PTAB for the control circuit. But then IFRAC says, what I think could be a good evidence supporting the PTAB's decision. So I want to tell you what I'm focusing on so you can respond to it. So I'm looking at column four and near the bottom, around line 64. This is IFRAC. It's on page 170 of the appendix. Okay. Okay. Okay. So column four, at the bottom, around line 63 or so, it says, whenever the listener wishes to play back the 60 seconds of a broadcast frozen by depressing the freeze key, this is affected by depressing the playback button. Why isn't that one touch playback from the beginning? Very good question, Your Honor. To understand that disclosure, we need to understand claim one of the 444 pattern. In addition to solely limitation, there's subsequent limitation talking about the interval of the time delay being the same as the time elapsed between the actuation of said record key and subsequent actuation of said playback key. And IFRAC is always adding one 60 seconds. So that particular limitation is not met. I believe that's the reason they expressly disclaimed any relevance of IFRAC to teach the control circuit. I understand the answer, but it does seem to me that in giving that answer, you're looking at the control circuit of IFRAC as opposed to the control circuit of Goldberg's. Correct. And then the question is, if you were to take the buttons, the idea of the buttons in IFRAC, and use Goldwasser's functionality, control circuit, how would you, it seems that that combination would result instead in a playback button that is not just the result of continually recording 60 seconds. So, I mean, there's no evidence in the underlining proceeding as to how that would be obvious. Obviously, related circuitry has to be changed to have both the solely limitation and the interval of the time delay limitation. So that's the reason I think it's in the underlining proceeding and also in the briefing. In this appeal, they expressly disclaimed, and Dragon had no opportunity to respond specific to the question the owner just raised here. It was not in this particular IPR proceeding. And just from my perspective as somebody having a computer engineering degree, I think the implementation could be varied. There might be different ways in order to come up, and it may not necessarily be obvious to a person already skilled in the art, especially keeping in mind the 444 pattern claims priority to 1992, 25 years ago, and the reference even before that. So it's difficult at this point with the hindsight to say whether it's obvious or not. But the point is, these did not make that argument. They expressly disclaimed any relevance or effect to the control circuit. And what we have now is Goldwasser. And Goldwasser does not teach that particular element. At least the board did not articulate any reason to show that. And these experts also only relied on conclusory statements, did not point to any specifics within Goldwasser to disclose the solely limitation. Your Honor, now I'm going to turn to the waiver issue. That's an issue brought up and also subject to motion for sanctions. So this actually asserts that Dragon had weighed the solely limitation in the underlying proceeding. But the doctrine of waiver is limited in its application. Right. Church, even cryptic arguments, not the case here, but even church cryptic arguments raised in abbreviated form are enough to defeat any assertion of waiver. So in this case. Your position is that it's not enough that somebody identify a particular claim limitation. They have to focus, if they're going to make a particular argument based on a particular set of words within that limitation, they need to make that more clear at the beginning when they file their petition? Oh, no, no. They are arguing the waiver by the patent owner. So the patent owner actually argued the solely limitation six times during the PTAP hearing. And then the outside argued, oh, that's not enough. Even though those six times when the solely limitation was argued, there was no objection. Everyone understood that that issue was preserved in writing. So now they're arguing. And the PTAP addressed that issue. Correct. Its opinion. Yeah, correct. And then I actually then the Bish argued that, no, that's not enough. You need to have it in writing. So I want to point you to patent owner's response after institution. So on page, appendix page 1173. On the top of that page, patent owner specifically listed three sub-elements of control circuit. The element number two is the solely limitation. Then on the next page, appendix 1174, the first full paragraph, patent owner stated that the address controller of Goldwasser is not the control circuit of claim one or within the broadest reasonable construction of control circuit because Goldwasser contains no disclosure that the address controller is configured as described in claim one and specifically pointing to element one, two, and three above. Okay, Mr. May, you're using up your rebuttal time. Would you like to save the rest? Yes, Your Honor. Thank you. Good afternoon, Your Honors. The issue here is whether the PTAP acted reasonably when it found it would be obvious to use a playback button to command playback of Goldwasser's recording. The answer to that is clearly yes, and the reasoning on this point is both explicit and thorough. We can start at joint appendix 18 where you see the PTAP's most relevant finding on the point. They say, we find that Goldwasser's address controller, when viewed in light of YIFRC's too broad an interface and Goldwasser's user control panel, would have taught, one of ordinary skill in the art, a control circuit configured to allow for simultaneous recording when the record key is actuated to begin recording and playback when the playback key is subsequently and solely actuated to begin playback. Even that sentence by itself is neither conclusory nor insufficient because it's obvious what the points of interest in the references were, right? You'll notice here in that single conclusory sentence that's been alleged to be insufficient that the PTAP explicitly identifies three things, the address controller of Goldwasser, the user control panel of Goldwasser, and YIFRC's interface for interfacing with a control circuit. And those three things together are what focused the board's attention in its well-written, final-written decision. Let's now look at how it got to that result. So, first the board started by correctly summarizing the invention here as a substantially immediate and seamless resumption of interrupted perception of program information. That is the one key solely playback limitation that's now being asserted on appeal. That occurs at Joint Appendix 12, where they analyze the independent claim and reach that conclusion. The board also analyzes Goldwasser's disclosure and finds that it's identical to what's being claimed in Claim 1 in respect to this notion of substantially immediate and seamless resumption of interrupted programming. So, Joint Appendix 9, when the board describes Goldwasser, they quote here from Goldwasser, for example, often one will be watching a particular program when one must temporarily cease watching it, for example, to take a telephone call or the like. It would obviously be convenient to be able to record the program from that point forward, complete the telephone call, and simply watch the remainder delayed by the length of time of the interruption. That in itself, which is substantial evidence in the record, it's the exact teachings of Goldwasser, the primary reference, was clearly significant to the board's conclusion. And what that teaching tells you, even by itself, would be enough for obviousness here, because it says all you do is simply watch the remainder of the delay. So, the only question that's left, the only difference now that we can even articulate between what's explicitly described in Goldwasser and this claim, is how do you simply watch the remainder? Do you need to do something more than push a single button? There's no reason to think that you do. And the board goes on to explain why that is. So, if you look at Joint Appendix 10, the board focuses there on the address controller of Goldwasser. And they note that the address controller of 58 controls the storage of the digitized video samples and is responsive to commands from the user control panel. So, we know that this controller, which allows you to simply watch the remainder of your program when your telephone call is over, responds to commands. And those commands come from what he calls a control panel. Again, so what's left? Well, we need now a button that is effectively, how do you implement this control panel? You implement it with buttons. Those buttons contain commands from a user. And so, where does the board turn to find those buttons? It turns to IFRAC quite correctly. And the relevant passage of IFRAC is the one Judge Stoll, you've already identified. That's discussed at Joint Appendix page. Page 10 that you're pointing to is the address controller. That's just something that controls storage. And it says it's responsive to commands, plural, from the user control panel, 50. How is that teaching one-button playback? Well, it's not, which is why, again, for the purpose of identifying the particular commands that would be available to a user, we look to IFRAC. IFRAC gives us two commands, pause and playback. Is that what the board did? Did it look at IFRAC for the commands? Yes, absolutely. So let's look at page 14 of the Joint Appendix. In the paragraph that begins, Petitioner cites IFRAC's freeze and playback keys. A little further down, the board says, in describing IFRAC, remember the difference here, IFRAC was an audio recording circuit, not necessarily video, but that difference is irrelevant for this discussion. So in describing IFRAC, the board notes, this recorded audio may then be played back when the user depresses the playback button. That's the key limitation that's now being disputed on appeal, which is do you need to do more than push a playback button? The answer is no. IFRAC teaches this explicitly, and the board comments on it. You play back when you press the playback button. And then the board correctly identifies Petitioner's argument below, which is under Petitioner's ground, this teaching is to be viewed in connection with teaching of Goldwasser, which allows this. You're going so fast, I can't find where you are. On page 14? Yes, I guess. You're on page 14, but you're going so fast, and I think that you're quoting things, and I want to see them. Yep, let's look at them. Let's just make sure I'm on the right page. Yes, that's it. So it's the paragraph beginning Petitioner cites, the first full paragraph? I found this recorded audio, but by the time I found it, you were saying something else. So I didn't know what you were saying. So this recorded audio may be played back when the user depresses the playback button. That's the allegedly missing limitation now that's being asserted on appeal, is how does the user send the command in to play back? Does it need to do anything besides hit playback? The answer is no. IFRAC teaches that. You push the playback button. IFRAC, by the way, has only two buttons in this embodiment, pause and playback, which is exactly what this claim is directed to, a two-button interface to pause and then resume playback. That's what IFRAC teaches you, and the board correctly applies that teaching. On joint appendix 16, then, around the middle of the page, you'll see the board says, we find that it would not have been beyond the skill of an ordinary skilled. Here's one problem. So this is IFRAC on page 10, right? Okay. Where you say this recorded audio may then be played back when the user depresses the play button. Well, this is solely the functionality, right? This is the functionality component. What happens when you press a button? Am I wrong? It's the command. No, I disagree. The relevance of IFRAC is what commands can the user send in to the controller. It's not what's the point. For this system to work, you need a controller. You need random access memory so that you can record and read back at the same time. Goldwasser has that. And you need a controller that controls the recording and reading back. Okay, but wait. Look on page 15 how the board characterizes your argument. Page 15 in the center where it says, In other words, petitioners relying on IFRAC to teach the two-button interfaces and not the actions that occur when those buttons are pushed. So you just told me IFRAC discloses solely because IFRAC tells you recording begins when the button is pushed. But then in the very next page, the PTO says you don't rely on IFRAC to teach anything other than buttons, and you certainly don't rely on it to teach what actions occur when those buttons are pushed. I don't know what to make of that. I would say that discussion that you're referring to at page 15 would suggest that the board actually found that Goldwasser itself already taught this notion of sole playback from the disclosure I showed you earlier where Goldwasser says you would simply watch the delayed playback after your call is over. Okay, but you're telling me that IFRAC discloses it, and I see everything you're saying, but then you're telling me, but the board did not rely on IFRAC for that disclosure, that what the next sentence demonstrates is the board instead relied on Goldwasser for that disclosure. So show me where Goldwasser discloses that since that's the fact-finding the board actually. Well, so I'm not clear that the board, I don't necessarily think the board made the fact-finding that you're referring to. No pointing. I'm sorry. Yes, I'm sorry. I apologize. What about in the bottom on page 15 where it says, IFRAC's playback and freeze keys combined with Goldwasser's simultaneous recording and playback functionality, it doesn't say functionality, but I'm reading that in, in terms of the next page, and it says, would have taught one of ordinary skill in the art to claim keyboard having a record key and a playback key. Yeah, so I believe that teaching is exactly what I was going to get to in answer to Judge Moore's question, which is I don't think the board actually made the fact-finding that they were merely relying on IFRAC to teach the interface and not the actions. That was my point. I think they could also have made that finding. It's not clear that they did. But when you get to the bottom of 15 and over to 16, I do think that's where the fact-finding becomes quite clear as to what the obviousness rationale was. They point to, at page 16, our expert, Mr. Reschelberger's, testimony that the use of buttons as disclosed in IFRAC was a well-known user interface design choice, that all VCRs from the 80s had buttons that had these sort of commands. And then they say we find that it would have been, would not have been beyond the skill of an ordinary skilled artisan to implement Goldwasser's user control panel with keys as recited in IFRAC. And then more directly, I think, to Judge Moore's question, if you look to now page 19. This is the second full paragraph. As discussed above language? What language are you pointing me to? I'm on page 19, the paragraph against petitioner response. Okay, so petitioner's ground is directed to implementing Goldwasser's user control panel with a two-button user interface as described in IFRAC. As discussed above, we find that one of ordinary skill in the art would have been motivated to implement Goldwasser's control panel with buttons, and that such a modification would have been within the knowledge of one of ordinary skill in the art. So that, to me, is the clear teaching. This was the argument that was being made below, that this controller in Goldwasser gives you all of the functionality you need because it gives you imminent flexibility. It accepts commands from a user control panel. Where does the board make the finding about this flexibility, you might ask? It's at page 12. We are on page 12. Okay. So it's in this second full paragraph. And in that paragraph, the board notes, as described in Goldwasser, recording is controlled by address controller 58, which is responsive to commands received from user control panel 50. It goes on. The user control panel may be used to send an interrupt that varies the playback of the video recorded by the device. This is exactly what I'm referring to. This is the flexibility that this controller gives you. It's responsive to a control panel. It lets the user put commands in. Those commands then could permit playback from, again, as the board had discussed at page 10, any portion of the memory at any speed without impacting the recording. That's the finding I made at 10. So taken together, it's eminently reasonable for the board to have said, if the only thing that's missing is a single button to resume playback, even if that's not in Goldwasser by itself, Goldwasser itself suggests such a technique, and UFRAC explicitly teaches a technique, two buttons that pause and resume a recording, which is what the alleged difference is. One last thing I would note is in Dragon's gray brief, they respond to an argument we made in the opening brief that the board's analysis of substantially immediate and seamless resumption of interrupted perception was not, in fact, an analysis of solely limitation. It clearly was, and I would point the court to Joint Appendix 1503, which was the transcript of the oral hearing below, where Dragon itself made the connection between one key seamless playback. They said one key seamless playback corresponds to the limitation, which says, quote, and then the solely limitation. Well, it's kind of hard to fault the board if they didn't go into more detail on the solely limitation when it wasn't raised until the oral hearing. Well, that was what I was going to get to next. So are you going to argue all of the time then? I was waiting for the switch. No, yes, I apologize. I took the rest of the time by agreement. Yeah, so on the waiver, let me just get to that quickly if I might. So you can try to get to it quickly. Go ahead. Well, I'm happy to answer. If you have a question, we can just start with that. Well, I don't understand the waiver argument. Okay, so then let me just quickly characterize it. I was assuming it wasn't going to be quick. Okay, well, the problem is this. Dragon made five arguments below. We identify them in our brief. So let me help. Why don't I start by telling you my problems with your waiver argument, which represents the vast majority of your brief. I'm really glad that you flipped your argument and went with, you know, you were flexible in recognizing where we were, and that was a good thing, because I thought 13 minutes of waiver and two minutes of merits, and I was really worried. So in any event, waiver, here's my problem. You agree, in fact, you argue, that the board decided that the solely limitation was present, and you've walked me through carefully, thoughtfully, and methodically, how they did that and what they relied on. So the board decided solely. There is no question solely was argued during the oral hearing, okay? Your argument to me, then, of waiver, it seems to me, is the board erred, and you also say at one point, and you objected to this below, which you objected to something, but we won't go into details about what you objected to. So really what your argument is is the board abused its discretion in failing to hold waiver because it was raised below, maybe not as much as you think it ought to have been or in the right place, but it was raised below, it was decided below, and now it's on appeal to us. So it seems to me that your question, your entire argument, couldn't possibly have been framed as they waived it because they never made it below, and thus they can't raise it on appeal, because they did make it below, and it was addressed below. Your argument, it seems to me, is the board abused its discretion by not agreeing with us that they didn't raise it at the right time below, and therefore, you should vacate and remand this case, Judge Moore. Okay, so that's not, you're correct in your prediction? I'm correct in almost everything except the fact that you don't want it vacated and remanded. No, no, no. I'm correct in everything else. You're correct in your prediction that this would take longer than two minutes because I'm already well over, so let me try just to address your concern very quickly. The board obviously had an obligation to address every element of the claim in its final written decision. There's no dispute about that. That's its obligation in analyzing a claim for invalidity. So it had to reach the solely limitation even if it wasn't pressed below at all. They have to say something about it. The problem we have is the entire theory of Appellant's case is that the board didn't spend sufficient time on the solely limitation, and our response to that is because it's a very simple reason. It was never argued below on the papers, and that's the problem. It wasn't argued until it sprang up suddenly at the oral hearing after all the papers and evidence had been collected and put into the record. The board's rules are clear that it's not the time to raise new arguments. This court's case law is clear that that's not the time to raise new arguments. That's the Dell case. So that's the objection we have is that this argument, their entire theory of the case is one they never press below. They pressed five arguments, most of which have to do with the- I understood your argument on appeal to be they waived the right to argue the solely limitation. What am I missing? Did I really misconstrue all of those many pages of your brief that were devoted to this? I don't think you've misconstrued them, but you might have misconstrued the import because we're certainly not seeking remand. Well, no, I got that. But I guess what I'm suggesting to you is that's the only thing the law would give you based on the facts of this case, but you seem to not appreciate that because you argued waiver and thought therefore it should result in an affirm, but I don't see how waiver can result in an affirm in a case where something was argued below, was addressed by the adjudicator below, and then is appealed to us. Your main argument was the board didn't comply with its own rules. It has rules that say it shouldn't reach an issue that wasn't raised in the briefs. So that all goes to whether the board abused its discretion, doesn't it? It doesn't really go to whether an appellate court should consider the argument on the merits. Am I wrong in my understanding of trial and appellate procedure? You are not wrong, but I think you've misconstrued what the remedy we're actually seeking is, which is that the appellant should not be permitted to seek a remand or a reversal on an argument that was not properly raised below. That's the waiver. But the board concluded it was properly raised because they addressed it and they didn't agree with your objection, which you made. Well, they never explicitly addressed my objection. So, again, they abused their discretion. Should I send it back to them for that? No, Your Honor. All right, we're good. Sit down. Talking about raising new argument, Your Honor, what I heard regarding the substantive merits of the case appears that Dish now is walking away from the position that Goldwasser teaches the sole limitation. Now they rely on IFRAC. But if the ---- I didn't understand them to walk away from it. I understood them to incorporate both of them to say, listen, it's in both places. Right. Still raising new argument, Your Honor. If you look at page 11 of the blue brief, we have quoted multiple broad quotes, two paragraphs where Dish made very clear that in the underlining IPR proceeding, it relied upon IFRAC only for the latch buttons, not for anything to do with control circuit. So, as a result, I think Dragon is prejudiced because Dragon relied on that. Now we are talking about a different case. We are talking about ---- Aren't we supposed to be looking, though, at what the PTAB said? And we're supposed to be focusing on what the PTAB said, right? Correct. I mean, so even if you think they've shifted a little bit, and I'm not sure if I agree with you on that, but even if you do, I'm looking up with the PTAB. Right. So what's wrong with the PTAB's decision? Right. Let's take a look at page 14 of appendix, the portion that counsel just read regarding IFRAC. It's about 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. About 10th line from the top says, This recorded audio may then be played back when the user depresses the playback button. This does not address the sole limitation. It's merely still talking about IFRAC teach a keyboard having a record key and a playback key. So even with two buttons, just logically a user could press record key again to stop recording, then press playback. So there's just no teaching here to talk about the sole limitation. That's consistent with the party's conduct in the underlying IPR proceeding. This is the problem. You say it could, but the PTO held the sole limitation was present, and that's a finding of fact. What a prior reference discloses is a question of fact. And I reviewed that question of fact for substantial evidence. So, I mean, could doesn't help you. So that particular one does not explain the sole limitation at all. And so that's, again... So I have what will be an uncomfortable question for you. Okay, sure. I like to let you know when they're friendly and hostile. This one I'll call uncomfortable. Okay. If I were to agree with Appelese in this case and uphold the decision in this case, it wipes away all the others that you argued today, doesn't it? It moots them entirely because this case, as I understand it, includes all of the claims that were asserted in the Apple case. So if we uphold this, the non-infringement in the Apple case is irrelevant, and the unified case includes a subset of the claims argued in this case. So even if I was going to fine for you on unified, that is mooted if I fine against you here as well. Is that right? Not exactly. Because procedurally in the Apple appeal in front of the district court, there are still motions for Section 285 attorney fees pending. So the issue about claim construction will come back to this court if the court does not make finding there. Oh, no, it will only come back to us if one of you doesn't like whatever the result is on 285, right? Correct. I mean, so, you know, for example, if I find in your favor on one issue here and that moots the other case, I mean, you know, you think it's going to come back there? Well, wouldn't it? I don't understand how I would have a case or controversy to decide the issue presented to me in the Apple case if I found this case against you. Right. In the Apple case, as Your Honor previously stated, the judge find that was the second clearest disclaimer, even though the only review is the Nobel review. No, no, I'm not asking to revisit the Apple case. Right, right. I'm just saying to you I don't think, I can't, I don't know, if we invalidate all, how about this? Aren't the claims at issue in this case, aren't all of those claims, there's no claims in the Apple case, are there, that aren't challenged in this case? That's my understanding. Right. There might be, I think, I agree with you, Your Honor. Okay. If you reach that decision, then it would be very unfortunate for my client. But let me just. His time's not running. You haven't ever started his time. Sorry. I'll just add one quick point, then I'll conclude my argument, Your Honor. No problem. So in the dish appeal, I want to remind the court that during the prosecution, the word solely was added to the application claim to indicate the precise function of the playback key. Is there something wrong with the clock? Because it's still not running. I'll conclude my argument. Just go ahead. Right. And the playback key and associated control circuitry would alone initiate automatic indexing for the playback function so as to enhance the seamless recovery effect. And the board's opinion in the dish appeal simply does not contain, other than concludes a statement, simply does not contain sufficient evidence or any evidence, let alone substantial evidence to support its obviousness finding. As a result, we would request the board's obviousness finding be reversed. Thank you, Your Honor. I thank you, Mr. J. I thank both counsel for their arguments in this case, and this case is submitted.